# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT OWENSBORO

**ROGER WAYNE PHILPOT ROACH**                                          **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 4:07CV-P112-M**

**ELVIS DOOLIN** *et al.*                                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff Roger Wayne Philpot Roach initiated this *pro se* action while a pretrial detainee in the Ohio County Jail.[1] He filed a complaint pursuant to 42 U.S.C. § 1983 (DN 1). He also filed an amendment (DN 14) as a matter of right, *see* Fed. R. Civ. P. 15(a)(1); thereafter filed a second amendment (DN 20), which this Court freely allows under Fed. R. Civ. P. 15 (a)(2); and later filed a motion to join two defendants (DN 29), which the Court **GRANTS** pursuant to Fed. R. Civ. P. 20(a)(2). Plaintiff also filed a motion for hearing (DN 28), which is **DENIED** as without justification at this stage in the proceeding.

This matter is before the Court for review of Plaintiff's complaint (DN 1) and its amendments (DNs 14, 20 & 29) pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). Seeking damages and injunctive relief, Plaintiff brings suit against the following Ohio County officers in their individual capacity: Sheriff Elvis Doolin; Deputy Sheriffs Norman Payton, Greg Clark, Robert Shocklee, Tom Voyles, Danny Kessinger and Jerry Bowling; and an Unknown Fish and Wildlife Officer. He also names the following officers as Defendants in their individual and official capacities: Gerry Wright, Jailer of the Ohio County Jail, and Terry Wright, Deputy Jailer. He fails to specify in which capacity he sues joined Defendants Ohio County Sheriff Deputies Tracy Beatty and Adam Wright. The specific claims

---

[1] Plaintiff has since been released.

against these Defendants will be summarized later in the Memorandum Opinion. Upon initial review and for the reasons that follow, a portion of the claims will proceed beyond initial review, and the remainder of the claims will be dismissed.

## I. **STANDARD OF REVIEW**

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604. "[T]he need for the district court to screen a complaint in a civil action filed by a prisoner, as required by 28 U.S.C. § 1915A, looks to the plaintiff's status when the case is filed." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001) ((citing *Johnson v. Hill*, 965 F. Supp. 1487, 1488 n.2 (E.D. Va. 1997)).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual

allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. ANALYSIS

### A.  Claim that vehicle was illegal searched

Plaintiff reports that while driving on September 15, 2007, he was pulled over for no reason and without probable cause by an Unknown Fish and Wildlife Officer, who searched Plaintiff's vehicle without a warrant or reasonably articulable suspicion (DN 1). Plaintiff alleges a violation of the Fourth Amendment to the U.S. Constitution and Section 10 of the Kentucky Constitution. The Court will allow this claim to proceed beyond initial screening.

The Court advises that Federal Rule of Civil Procedure 4 provides, in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P 4(m). Because the Court is required to screen the complaint under § 1915A prior to service on Defendants, the Court will count the 120 days from the date of this Memorandum Opinion. Accordingly, **Plaintiff has 120 days from the date of this Memorandum Opinion within which to move to amend his complaint to name the Unknown Fish and Wildlife Officer or show good cause for his failure to do so.** Plaintiff is put on notice that his failure to meet the requirements of the federal rules could **result in dismissal** of this action as to the Unknown Defendant.

**B.     Claims that residence was illegally searched**

Plaintiff claims that after he was taken to jail on September 15, 2007, several deputies, including Defendants Bowling and Shocklee, illegally searched his home without a search warrant (DN 1). Plaintiff further alleges an illegal search of his home in July 2006 involving Defendants Doolin, Clark, and Payton and an illegal search of his home on February 19, 2002, involving Defendants Payton, Clark, Doolin, Voyles, and Shocklee (DN 1).

The statute of limitations for 42 U.S.C. § 1983 actions is governed by the limitations period for personal injury cases in the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Kentucky § 1983 actions are limited by the one-year statute of limitations found in Ky. Rev. Stat. Ann. § 413.140(1). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir.1990). Although state law establishes the statute of limitations for § 1983 actions, federal law controls on the issue of when the statute of limitations begins to run. *Sevier v. Turner*, 742 F.2d

4

262, 272 (6th Cir.1984). Federal law establishes that the § 1983 statute of limitations accrues when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in the complaint. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). "[A] claim for wrongful arrest under § 1983 accrues at the time of the arrest or, at the latest, when detention without legal process ends." *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). When the face of the complaint shows that an action is time barred, the case may be dismissed summarily upon screening. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

Plaintiff filed his complaint[2] over one year after each of the allegedly illegal searches in July 2006 and February 2002. Accordingly, the Fourth Amendment claims regarding those searches must be dismissed as time-barred.

The Court will allow the Fourth Amendment illegal search claim with respect to the September 15, 2007, incident to proceed against Defendants Bowling and Shocklee.

**C.     Perjurious statements during trial**

Plaintiff claims that after his arrest as a result of the February 2002, allegedly illegal search, he was charged with manufacturing meth, trafficking, possession of drug paraphernalia, and possession of pills in an improper container (DN 1). He alleges that Defendant Deputy Sheriffs Payton and Clark lied under oath and "fabricated several pieces of evidence under oath" at his criminal trial.

"It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings." *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999)

---

[2]Under the "prison mailbox rule," "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Plaintiff certifies that the complaint was delivered to the prisoner mail system for mailing on September 6, 2007.

(citing *Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983)). "Thus, it is clear that [Defendants] would be insulated from liability for any testimony that [they] provided as [] witness[es] at trial, no matter how egregious or perjurious that testimony was alleged to have been." *Id.*

Plaintiff's claim Defendants Payton and Clark lied and fabricated evidence under oath must therefore be dismissed.

**D.      Claims of interference with family relations and retaliation**

Plaintiff claims that in April 2007, his sister "signed a custody paper for Plaintiff" with respect to her two children (DN 1). While the two children were in Plaintiff's custody, deputies forcefully took them from him. He names Defendants Beatty, Adam Wright, Voyles, and Kessinger as being involved in this April 2007 incident. On a second occasion, Plaintiff's two nieces were taken away from him by Officers Beatty, Adam Wright, Payton and Shocklee based on lies and under the threat of a warrant and incarceration. Plaintiff also claims that Beatty and Adam Wright took the children in retaliation for filing this action against their relatives (DN 29).[3]

The Court will allow Fourth Amendment claim of illegal seizure and Fourteenth Amendment claim of interference with family integrity/familial association,[4] *see Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000); *J.B. v. Washington County*, 127 F.3d 919, 927 (10th Cir. 1997), to continue against Defendants Voyles, Kessinger, Payton, Shocklee, Beatty, and Adam Wright and will allow the retaliation claim to continue against Defendants Beatty and Adam Wright.

---

[3] According to Plaintiff, Defendant Beatty is Defendant Doolin's nephew, and Defendant Adam Wright is the son of Defendant Gerry Wright and nephew of Defendant Terry Wright.

[4] It is unclear to the Court at this stage whether Plaintiff had legally custody of his nieces at the time of their alleged takings. The Court will therefore allow these claims to proceed for further development.

**E.     Claim of deliberate indifference to serious medical needs**

Plaintiff reports that on August 12, 2007, while at the Ohio County Jail, he was experiencing dizzy spells, chest pain, and twice lost consciousness and fell to the floor (DN 14). He reports that he previously had a heart attack and was on numerous medications, "which Plaintiff had not received since arriving at jail." Inmates placed Plaintiff on a bed and called for a jailer. Non-defendant Deputy Jailer Andrew called for emergency help, and two emergency medical technicians (EMT's) arrived. Plaintiff advises that his blood pressure was 170/110 and that his "heart was taching erraticly." The EMT's "quickly told jailer 'Andrew' 'This man needs an ambulance immediately.'" Deputy Andrew called Defendant Jailer Gerry Wright, who refused the request to call an ambulance for Plaintiff several times, even after speaking with the EMT's, who continued to advise, "We are not leaveing here until someone calls an ambulance for This man." Finally, after thirty minutes to an hour, Defendant Jailer Wright advised that he "would have another jailer to come to the jail and take Plaintiff to the hospital." "After Plaintiff and the E.M.T.'s waited for approx. 15 minutes, (with the defibulator ready) a woman jailer took Plaintiff to the hospital." At the Ohio County Hospital, Plaintiff was given "a pain medication injection and maybe blood pressure medication. (Plaintiff was dizzy and semi-conscience)." Plaintiff reports that he "was advised by doctor to get the rest of Plaintiffs medications (especial blood pressure medication), to the jail." Plaintiff claims that Defendant Jailer Wright's actions put his life in jeopardy and were clearly indifferent to his serious medical needs.

At the outset, the Court notes that Plaintiff was not a convicted prisoner at the time of the events alleged; he was a pretrial detainee. As such, the Eighth Amendment's proscription against cruel and unusual punishment does not apply to him. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). "Under the Fourteenth Amendment Due Process Clause, however,

7

pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Id.* at 685-86.

To sustain a cause of action under § 1983 for failure to provide medical treatment, a plaintiff must demonstrate that the defendants acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Such a claim "has two components, one objective and one subjective." *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001).

To satisfy the objective component, "'the inmate [must] show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Blackmore v. Kalamazoo County*, 390 F.3d 890, 896 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[T]he evidence need only show that 'the medical *need* at issue is sufficiently serious.'" *Blackmore*, 390 F.3d at 896 (emphasis added) (quoting *Farmer*, 511 U.S. at 834).

A medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore*, 390 F.3d at 898. However, "[t]his 'obviousness' standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs 'may *also* be decided by the *effect* of delay in treatment.'" *Id.* at 897 (first emphasis added) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Examples of the latter branch include claims of "delayed administration of medication . . . or occasional missed doses of medication," *Blackmore*, 390 F.3d at 897; "claims based on a determination by medical personnel that medical treatment was unnecessary," *id.* at 898; and "decisions involving whether the prisoner was treated adequately[,] or whether any delay in providing medical care was harmless." *Id.* In such circumstances, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place

8

verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* (quoting *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill*, 40 F.3d at 1188) (internal quotation marks omitted). "[W]here a plaintiff's claims arise from an injury or illness 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention,' the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated." *Blackmore*, 390 F.3d at 899-900 (citation omitted). "Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* at 900.

To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Comstock*, 273 F.3d at 702-03. The indifference must be substantial; that is, it must be an offense to evolving standards of decency. *Estelle*, 429 U.S. at 106. The question of whether diagnostic techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment. At most, a medical decision not to order an x-ray or like measures represents medical malpractice. *Id.* at 107. Furthermore, allegations of "inadvertent failure to provide adequate medical care" or of a negligent diagnosis fail to state a cause of action. *Id.* at 105-06. Simply stated, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. "[W]here a plaintiff's claims arise from an injury or illness 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention,' the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated." *Blackmore*, 390 F.3d at

899-900 (citation omitted). "Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* at 900.

Here, Plaintiff's dizzy spells, chest pain, and two episodes of unconsciousness are complaints which are "'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 899-900 (citation omitted). In such a case, a "plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated." *Id.* "Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* at 900. The Court will allow the claim of deliberate indifference to serious medical needs to proceed against Defendant Jailer Gerry Wright.

**F.     Claims of excessive force**

Plaintiff claims that he was assaulted by Defendant Deputy Jailer Terry Wright on September 20, 2007, and on October 3, 2007 (DN 14). Upon consideration of Plaintiff's allegations, the Court will allow the Fourteenth Amendment excessive force claim to proceed against Defendant Terry Wright.

**G.     Claim involving inmate McDowell**

Plaintiff finally alleges that on December 18, 2007, inmate McDowell, who has a history of mental problems, was placed in Plaintiff's cell (DN 14). According to Plaintiff, on December 22, 2007, McDowell approached him, said something, and punched Plaintiff. Plaintiff advises that he responded by pushing McDowell into the shower and punching him. Plaintiff asked McDowell if he had enough, McDowell answered in the negative, and Plaintiff "defended himself by punching McDowell twice." Plaintiff asked McDowell again if he had enough, McDowell again answered

in the negative, and Plaintiff punched McDowell "a few more times and inmate McDowell said 'He had enough[].'" Plaintiff then stopped fighting and helped McDowell get up off the floor at McDowell's request. Plaintiff reports that the altercation lasted several minutes, that McDowell and others called for the jailer, and that the jailer placed McDowell in an isolation cell. Plaintiff claims that he was advised by another inmate that Defendant Terry Wright placed McDowell in Plaintiff's cell because Defendant Terry Wright knew that Plaintiff would "kick his (McDowells) ass."

A couple of days later, Defendant Jailer Gerry Wright told Plaintiff to go and talk to McDowell because the Jailer was going to place McDowell back into Plaintiff's cell. Plaintiff went to McDowell's isolation cell, where McDowell told him that he heard voices directing him to hurt people and himself. Defendant Jailer Gerry Wright then placed McDowell back into Plaintiff's cell. Plaintiff believes that this was done in hopes of Plaintiff getting hurt or in hopes of Plaintiff hurting McDowell. Plaintiff again claims that "Deputy [Terry] Wright had told inmates, he was going to put McDowell in Plaintiffs cell, because he (Wright) knew they would fight."

"[P]retrial detainees held in [] jail are protected under the Fourteenth Amendment, which provides that 'a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.'" *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "Under the Fourteenth Amendment's Due Process Clause, the proper inquiry is whether the challenged action "'amounts to punishment of the detainee.'" *Leary v. Livingston County*, 528 F.3d 438, 450 (6th Cir. 2008) (quoting *Wolfish*, 441 U.S. at 535). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "'punishment.'" *Wolfish*, 441 U.S. at 539. "Conversely, if a restriction or condition is not

11

reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* "'There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" *Wolfish*, 441 U.S. at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

In the instant case, when McDowell was placed, at the direction of Defendant Terry Wright, in the cell with Plaintiff the first time, an altercation occurred. Although McDowell punched Plaintiff first, the rest of the altercation consisted of Plaintiff punching McDowell until McDowell gave up, and Plaintiff even assisted McDowell in getting up off the floor. Plaintiff does not allege that McDowell was placed in his cell the first time to punish Plaintiff; rather, he specifically reports that he was advised by another inmate that Defendant Terry Wright placed McDowell in Plaintiff's cell because Defendant Terry Wright knew that Plaintiff would "kick his (McDowells) ass." Further, Plaintiff alleges no injury, *de minimis* or otherwise, as a result of the punch from McDowell and has, therefore, failed to sustain a Fourteenth Amendment claim.

With respect to the second time McDowell was placed in Plaintiff's cell, Plaintiff claims that McDowell's placement was either in hopes that Plaintiff would be harmed or in hopes that Plaintiff would harm McDowell. In mentioning that McDowell was experiencing auditory hallucinations, Plaintiff may be asserting that Defendant Jailer Gerry Wright's placement of McDowell in his cell caused Plaintiff to fear for his safety. Plaintiff, however, again asserts no injury as a result of this speculative fear, and he has since been released from the custody of the Ohio County Jail, rendering any further possibility of an altercation with McDowell a nullity.

Any Fourteenth Amendment claims arising out of McDowell's placement in Plaintiff's cell will therefore be dismissed.

### III. **CONCLUSION**

Upon initial review of the complaint and its amendments, the Court will allow the following claims to proceed: (1) the claim against the Unknown Fish and Wildlife Officer that Plaintiff's vehicle was illegally searched in violation of the Fourth Amendment of the U.S. Constitution and Section 10 of the Kentucky Constitution; (2) the Fourth Amendment claim that Plaintiff's residence was illegally searched in September 2007 against Defendants Bowling and Shocklee; (3) the Fourth Amendment claim of illegal seizure of Plaintiff's nieces and Fourteenth Amendment claim of interference with family integrity/familial association against Defendants Voyles, Kessinger, Payton, Shocklee, Beatty, and Adam Wright; (4) the retaliation claim against Defendants Beatty and Adam Wright; (5) the Fourteenth Amendment claim of deliberate indifference to serious medical needs against Defendant Gerry Wright; and (6) the Fourteenth Amendment claim of excessive force against Defendant Terry Wright. All other claims will be dismissed.

The Court will enter a separate Scheduling Order to govern the development of the continuing claims. The Court will also enter a separate Order dismissing all other claims.

Date:

cc: Plaintiff, *pro se*
      Defendants
      Ohio County Attorney
4414.005